**FILED**
**Jun 20, 2023**
**02:00 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **BELINDA LEMAIRE,** | ) | **Docket No.: 2021-05-0969** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | **State File No.: 45689-2020** |
| **LOWE'S INVESTMENT** | ) | |
| **CORPORATION,** | ) | |
| **Self-Insured Employer.** | ) | **Judge Thomas Wyatt** |
| | ) | |

---

## COMPENSATION ORDER

---

On June 6, 2023, the Court held a Compensation Hearing in which Belinda Lemaire sought a change in treating physicians and permanent disability benefits. Lowe's Investment Corporation argued that a change in physicians is not warranted because the authorized physician remains available and willing to treat her. It also raised several issues regarding her disability benefit claim, including the correct impairment rating on which to base her award; the applicable compensation rate; and her entitlement to a resulting award. For the reasons below, the Court denies Ms. Lemaire's request for a change of physicians, but awards her permanent partial disability benefits.

### History of Claim

Ms. Lemaire is sixty-six years old with a high school diploma. She sustained injury at Lowe's on July 10, 2020, when a load of shelving fell onto her right foot. Since the injury, she has experienced deadness, burning, coldness, tingling, and pain in her right lower extremity. Other than temporary improvement in physical therapy, her symptoms remain unchanged.

Lowe's accepted the injury as compensable and authorized care with podiatrist Dr.

1

Matthew Neuhaus.[1]  He diagnosed contusions and a right-foot stress fracture plus reflex sympathetic dystrophy.[2]  He took Ms. Lemaire off work, and Lowe's paid $341.91 per week in temporary disability benefits.  X-rays of the right foot showed "osteopenia throughout the foot."  Dr. Neuhaus ordered physical therapy that temporarily relieved Ms. Lemaire's pain.  However, her pain returned when her physical therapy ended, so Dr. Neuhaus recommended pain management.

Ms. Lemaire selected Dr. Jeffrey Hazlewood from a panel of pain management physicians.  He saw her in October 2020 and immediately suspected that she had Complex Regional Pain Syndrome (CRPS) in her right lower extremity.  He testified that CRPS occurs when the "autonomic nervous system just goes haywire."

Dr. Hazlewood ordered acupuncture and H wave treatments, but Ms. Lemaire discontinued them because they increased her symptoms.  He also offered nerve blocks and neuromodulator medications, but she declined those over concerns about side effects and contraindications due to her glaucoma.

Dr. Hazlewood finalized his CRPS diagnosis a year later after a psychological evaluation showing that Ms. Lemaire did not intentionally embellish her symptoms nor suffer from psychological conditions that might supplant her physical injury.  He stated that he diagnosed her with CRPS, even though it is a controversial diagnosis, after thoroughly following accepted diagnostic protocols.

Dr. Hazlewood placed Ms. Lemaire at maximum medical improvement on August 4, 2021.  He gave her a four-percent impairment under the Sixth Edition of the *AMA Guides,* finding four objective indicators of CRPS—edema and changes in skin temperature, color, and texture.  Due to her CRPS, Dr. Hazlewood permanently restricted Ms. Lemaire from climbing ladders, pushing, pulling, or lifting over fifteen pounds; from standing or walking more than fifteen minutes of any given hour; and from sitting more than three hours of any six- or eight-hour period.  Finally, he instructed her to elevate her right leg and use a crutch as needed.

Ms. Lemaire testified that she attempted to return to Dr. Hazlewood for treatment after her maximum medical improvement date.  However, a case manager told her, "The doctors are finished with you."  Lowe's later agreed to authorize her return to Dr. Hazlewood.

In February 2022, Dr. Hazlewood noted no changes in her physical findings, recommended home exercises, and discussed medication use.  He also responded to Ms.

---

[1] Lowe's stipulated that Ms. Lemaire's injury arose primarily out of and in the course and scope of employment.

[2] Dr. Hazlewood referred to this condition as Complex Regional Pain Syndrome.

Lemaire's questions about his medical findings, impairment rating, and difficulties with her workers' compensation claim.

Ms. Lemaire requested treatment with another physician because Dr. Hazlewood provided no new treatment options. However, Dr Hazlewood testified he was willing to continue treating her "if she came back to me saying, 'Dr. Hazlewood, I need further treatment. I've decided I want further treatment.'" He stated he would consider ordering a nerve block but thought the chance of it helping at this point is only five percent. He would also consider prescribing neuromodulators, cognitive behavioral therapy, and physical therapy to complement home exercises. He testified that if those treatments did not help, "I just don't know much else to do."

In September 2022, Ms. Lemaire saw podiatrist Dr. Reece Rickertsen on her own. He performed x-rays of both feet that showed "[m]oderate degenerative changes . . . throughout the midfoot and rear foot. Bone is significantly washed and osteopenic in nature." The x-rays of the left foot were "normal."

Moving now to Ms. Lemaire's claim for permanent disability benefits, Dr. Hazlewood returned her to work under restrictions shortly after he began treating her.[3] Ms. Lemaire attempted to work restricted duty for more than a year. She experienced severe pain when working and at times had to walk away from customers because her pain brought her to tears. Christine Wade, a scheduler for Lowe's, testified that she observed the problems Ms. Lemaire experienced while working and offered to give her a wheelchair no longer used by Ms. Wade's father.

Ms. Lemaire testified that the pain and other symptoms caused by her CRPS significantly impaired not only her work activities but also her activities of daily living. She has difficulty walking, especially for long distances and on uneven surfaces, which negatively impacts doing housework, shopping for groceries, and interacting with her grandchildren. She has difficulty entering, exiting, and operating a vehicle. She applied for and received a handicap placard because of her CRPS.

While she worked restricted duty, Ms. Lemaire called in sixty-five times to report she was unable to work scheduled shifts. Some of the absences were weather-related, but most were because of her CRPS.

Between April 2 and 10, 2022, Ms. Lemaire did not call to report her absences from six consecutive scheduled shifts. She testified that she did not know she was on the schedule but conceded she had access to her work calendar to check if she was on the calendar those dates. In fact, Lowe's scheduler sent Ms. Lemaire the following text

---

[3] Lowe's paid temporary total disability benefits when Lemaire missed work due to her injury. Ms. Lemaire did not prove entitlement to further temporary total disability benefits.

message after her second failure to report an absence: "Hi Belinda. This is Christine Wade calling to check on you. Is everything ok? It is not like you not to call in."

Ms. Lemaire testified that it became difficult to get through to Lowe's management to report absences. She presented three recorded call-ins to show the difficulty she encountered in reporting absences. However, she was able to report her absences on the dates of those calls. Ms. Lemaire did not testify that she responded to Ms. Wade's text message about not calling in, and she offered no direct explanation for why she did not report her absences.

Lowe's terminated Ms. Lemaire under its attendance policy after her sixth failure to call in an absence.[4]

In support of her claim for permanent disability benefits, Ms. Lemaire sought to admit a C-32 Standard Form Medical Report completed and signed by orthopedist Dr. H. James Wiesman, Jr., whom she saw for an independent medical examination. She filed the C-32 on April 12, 2023, under a document entitled "Notice of Filing." Under the same notice, she also filed Dr. Wiesman's Final Medical Report, typewritten report, and curriculum vitae.

Lowe's objected to the C-32 because Ms. Lemaire did not file a document specifically stating that she intended to use the C-32 at trial. It did not argue failure of service or surprise that Ms. Lemaire sought to introduce the form at trial. Lowe's also objected on hearsay grounds. The Court took the objections under advisement but upon consideration overrules them.[5]

Dr. Wiesman saw Ms. Lemaire on February 7, 2023, and performed a physical examination. His report discussed his review of records of Drs. Hazlewood, Neuhaus, and Rickertsen. He completed and signed the C-32 and Final Medical Report on April 6. He dated and signed his report on April 7. All signatures are notarized.

In the C-32 and Final Medical Report, Dr. Wiesman agreed with Dr. Hazlewood that Ms. Lemaire attained maximum medical improvement on August 4, 2021. He rated her impairment for her CRPS at twenty percent under the *Sixth Edition of the AMA Guides*.

Dr. Wiesman discussed the basis of his impairment rating and noted it differed from Dr. Hazlewood's rating because he found ten symptoms supporting CRPS: mottled skin color; cool skin temperature; edema; dry or overly moist skin; smooth or nonelastic skin texture; soft tissue atrophy; especially at the digit tips; joint stiffness and decreased passive

---

[4] Ms. Wade testified that Lowe's policy stated that three consecutive no call/no show incidents are considered job abandonment.

[5] The Court will discuss the decision to overrule the objection later in the order.

motion; blemished, curved, or talonlike nails; hair growth changes; and radiographs showing trophic bone changes or osteoporosis. Dr. Hazlewood had only noted four findings, making his rating lower under the *Guides*.

Dr. Hazlewood testified that he more accurately rated Ms. Lemaire's impairment because his examination was performed on the date of maximum medical improvement. He stated that the findings made by Dr. Wiesman several months later could have been caused by disuse or factors not related to CRPS. Dr. Wiesman stated that rating Ms. Lemaire's impairment later than Dr. Hazlewood gave a better account of how CRPS affected her over time.

Regarding the applicable compensation rate, Lowe's claimed entitlement to the Social Security offset, which reduces the rate to $108.36 per week. In October 2022, Ms. Lemaire began receiving $2,024.10 per month in Social Security Retirement benefits. She testified that she filed for her Social Security one year early because she lost her job at Lowe's.

**Findings of Fact and Conclusions of Law**

At a Compensation Hearing, Ms. Lemaire must prove all aspects of her case by a preponderance of the evidence. Tenn. Code. Ann. § 50-6-239(c)(6) (2022). Specifically, she must prove entitlement to treatment by another physician and permanent disability benefits.

*Objection to Dr. Wiesman's C-32*

Before deciding the substantive issues, the Court considers Lowe's objections to Dr. Wiesman's C-32. Lowe's first objected because Ms. Lemaire did not file a document stating her intent to use the form at trial.

Tennessee Code section 50-6-235(c)(2) states that a C-32 is admissible "if notice of intent to use the sworn statement is provided to the opposing party or counsel not less than twenty (20) days before the date of the intended use." The statute does not specify a mechanism for the requisite notice.

The filing of medical records in the Court of Workers' Compensation Claims does not happen in a vacuum. The Court's rules require that parties file and serve medical records intended for use at a hearing no later than ten days before the hearing. Tenn. Comp. R. & Regs. 0800-02-21-.16(2)(a) (February, 2022). The Scheduling Order makes the same requirement. Because no other reason for filing medical records exists, Ms. Lemaire's timely filing and service of Dr. Wiesman's C-32 gave Lowe's ample notice that she intended to use the form and its attachments at trial. Lowe's knowledge of Ms. Lemaire's intent to use the C-32 is confirmed by the fact that Lowe's discussed Dr. Wiesman's C-32

5

in its pre-trial brief filed fourteen days before the hearing.

The Court also overrules Lowe's hearsay objection to Dr. Wiesman's report. The C-32 provides a section for a narrative discussion of the course of the physician's treatment. That space is blank on the form completed by Dr. Wiesman. The report, filed at the same time and under the same cover as the C-32, describes Dr. Wiesman's examination, his review of the medical records, and his opinions regarding diagnosis and impairment rating. It bears Dr. Wiesman's notarized signature, as does the C-32. Based on the above facts, the Court holds that Dr. Wiesman prepared the report in conjunction with his completion of the C-32. For that reason, the report is admissible as part of the C-32. *See Cowan v. Knox Cnty.,* No. E2015-00405-SC-RS-WC, 2016 Tenn. LEXIS 121, at *23-25 (Tenn. Workers' Comp. Panel Feb. 24, 2016) (A report addressing questions raised in response to a C-32 was not admissible because it was not a part of the C-32).

*Ongoing Medical Treatment*

Ms. Lemaire seeks to replace Dr. Hazlewood as her treating physician because he offered no new treatment options when she last saw him. However, she acknowledged that he earlier offered her nerve blocks and prescription medication, which she declined. Dr. Hazlewood testified he is willing to continue treating Ms. Lemaire if she is willing to participate in the treatment.

An employee's obligation to accept treatment from a panel-selected physician is a benchmark of the Workers' Compensation Law. Tenn. Code Ann. § 50-6-204. A change in physicians is not warranted unless the authorized physician is unable, unavailable, or refuses to treat.

Here, Dr. Hazlewood remains able, available, and agreeable to treat Ms. Lemaire. Her decision to decline his offered treatment is an insufficient ground to support a change of physician. *See Cook v. Newton Nissan of Gallatin/Newton Ford, LLC,* 2023 TN Wrk. Comp. App. Bd. LEXIS 12, at *21-22 (Feb. 22, 2023). For the above reasons, the Court denies Ms. Lemaire's request for a change of her treating physician.

*Permanent Partial Disability Benefits*

Tennessee Code Annotated section 50-6-207(3) calls for disability benefits when an employee's partial disability is adjudged permanent. Here, both medical experts found that Ms. Lemaire retains permanent physical impairment due to her work-related CRPS. Thus, the statute provides her an original award of disability benefits calculated by multiplying the applicable impairment rating by 450 weeks and then multiplying that number of weeks by the applicable compensation rate. *Id.*

The Court must first determine the appropriate impairment rating. The treating

physician, Dr. Hazlewood, concluded that Ms. Lemaire retains a four percent rating. As treating physician, his rating is presumed correct unless rebutted by "a preponderance of the evidence[.]" Tenn. Code Ann. § 50-6-204(k)(7). Ms. Lemaire urged the Court to award her benefits based on Dr. Wiesman's rating of twenty-percent impairment.

In deciding whether she rebutted Dr. Hazlewood's rating, the Court considers Ms. Lemaire's testimony. The Court observed her as she testified, and she appeared to be in both physical and emotional pain. Still, she stayed focused on the task of providing pertinent facts and was forthcoming in responding to cross-examination.

The Court finds Ms. Lemaire's testimony about the impact of her injury and the pain she endures credible. The evidence at the hearing corroborated Ms. Lemaire's testimony on this point. Lowe's scheduler testified she observed the impact of Ms. Lemaire's symptoms on her work activities and was moved to offer her a wheelchair. Three well-qualified physicians diagnosed her with CRPS, a controversial diagnosis, and Dr. Hazlewood placed significant permanent restrictions on her activities because of the diagnosis. The Court was impressed with Ms. Lemaire's attempt to continue working despite the pain she endured from her CRPS.[6]

In considering competing ratings, the Court considers the qualifications of the experts, the circumstances of their evaluations, and the information available to them. *Ledford v. Mid-Georgia Couriers, Inc.,* 2018 TN Wrk. Comp. App. Bd LEXIS 28, at *7 (June 4, 2018).

Both rating physicians are well-qualified. Dr. Hazlewood saw Ms. Lemaire more often than Dr. Wiesman, but Dr. Wiesman saw her more recently. The Court finds the timing of the examinations important in explaining the level of impairment to which Ms. Lemaire testified during the hearing. While Dr. Hazlewood questioned whether Dr. Wiesman's additional findings were due to disuse rather than CRPS, the Court finds that Dr. Hazlewood placed significant *permanent* restrictions on Ms. Lemaire's activities due to her CRPS. Thus, Ms. Lemaire's reduced use of her right foot was directly caused by her work-related CRPS. Finally, the Court also credits Dr. Wiesman's impairment rating over that given by Dr. Hazlewood because Dr. Wiesman gave her credit in the rating process for x-rays showing bone changes in Ms. Lemaire's right foot, while Dr. Hazlewood did not.[7]

Based on the above factors, the Court holds that Dr. Wiesman's impairment rating better assesses the extent of impairment endured by Ms. Lemaire, considering his rating with Ms. Lemaire's credible testimony. The preponderance of the evidence is that Ms.

---

[6] The Court also recognizes the effort of Lowe's and Ms. Wade to accommodate the restrictions placed on Ms. Lemaire's activities.

[77] The *Guides* makes radiographic changes a factor in the percentage of impairment assigned for CRPS.

Lemaire's award of permanent partial disability benefits should be based on Dr Weisman's twenty-percent rating. Thus, she is entitled to ninety weeks of permanent partial disability benefits.

The Court now turns to the compensation rate issue. Lowe's contended that it is entitled to an offset for its contribution to her Social Security retirement benefits.

Tennessee Code Annotated section 50-6-207(4)(A)(i) established the Social Security offset against permanent total disability benefits when, on the date of injury, an employee is within five years of her date of eligibility for full Social Security retirement benefits. In *McCoy v. T.T.C. Ill., Inc.,* 14 S.W.3d 734, 737 (Tenn. 2000), the Supreme Court applied the offset to permanent partial disability benefits and held the employer's contribution is fifty percent of the Social Security benefit received by the employee. Based on the above authority, the Court holds that Lowe's is entitled to the Social Security offset because Ms. Lemaire was within five years of the date of her entitlement to full retirement benefits on the date of her injury and now receives those benefits.

Based on Ms. Lemaire's monthly Social Security benefit of $2,024,10, the Court holds that the employer's weekly contribution to that benefit totals $233.55 ($2,024.10 times 12 divided by 52 divided by 2). Thus, after applying the offset against the compensation rate of $341.91, Ms. Lemaire's compensation rate is reduced to $108.36 per week.

However, the Court must also consider the minimum compensation rate. Tennessee Code Annotated section 50-6-102(16) defines the minimum compensation rate as "fifteen percent (15%) of the state's average weekly wage." According to the Bureau's statistics, the minimum weekly compensation rate on Ms. Lemaire's date of injury is $149.10. Thus, the Court awards original permanent partial disability benefits of $13,519.00 ($149.10 times 90).

Finally, the Court denies Ms. Lemaire's claim for a resulting award. Tennessee Code Annotated section 50-6-207(3)(D)(ii) states that an employee cannot receive a resulting award of permanent partial disability benefits when "[t]he employee's loss of employment is due to the employee's misconduct[.]" The evidence showed that Lowe's provided restricted-duty employment to Ms. Lemaire until she failed to call in to report her absences from six consecutive scheduled shifts. The Court holds that an employee's violation of an employer's attendance policy constitutes misconduct connected with the employment. For that reason, Ms. Lemaire is not entitled to a resulting award.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Lemaire is entitled to an original award of permanent partial disability benefits totaling $13,519.00.

2. Ms. Lemaire is entitled to ongoing medical benefits for her injury and resulting CRPS with Dr. Hazlewood.

3. Lowe's shall pay the $150.00 filing fee to the Clerk of the Court of Workers' Compensation Claims within five business days of entry of this order under Tennessee Compilation Rules and Regulations 0800-02-21-.06. Lowe's shall complete and file an SD-2 documenting the conclusion of this case within ten days of the date this order becomes final. Unless appealed, this order becomes final thirty days after the date of issuance.

**ENTERED June 20, 2023.**

*Thomas Wyatt*
_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

# APPENDIX

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Motion to Withdraw
4. Order for Substitution of Counsel of Record
5. Notice of Appearance
6. Scheduling Order
7. Revised Scheduling Order
8. Order Referring Case to Mediation
9. Post-Discovery Dispute Certification Notice
10. Pre-Compensation Hearing Statement
11. Employer's Witness and Exhibit List
12. Employee's Witness and Exhibit List
13. Employee's Pre-Hearing Brief
14. Employer's Pre-Hearing Brief
15. Employee's Pre-Hearing Brief

Exhibits:
1. Wage Statement
2. Employee's Choice of Physician form—Dr. Hazlewood
3. Employee's Choice of Physician form—Dr. Neuhaus
4. Final Medical Report—Dr. Hazlewood
5. Final Medical Report—Dr. Wiesman
6. Social Security Notice of Award
7. Photographs of Ms. Lemaire's feet and legs
8. Dr. Hazlewood's impairment rating, restrictions, and February 2, 2022 office note
9. MMC Podiatry records
10. Transcript of Dr. Hazlewood's deposition
11. Primary Care and Hope Clinic of Smyrna report
12. Workday log-in email
13. Chris Basham business card
14. Ms. Lemaire's notes
15. Back TTD check
16. Ms. Lemaire's emails to Christine Wade
17. Lowe's work absence summaries
18. Ms. Lemaire's emails to Lakeisha Chisholm
19. Sedgwick letter to Ms. Lemaire (identification only)
20. Lowe's FMLA leave of absence papers

21. Sedgwick letter to Dr. Neuhaus regarding utilization review (identification only)
22. Dr. Neuhaus records
23. Physical therapy records (identification only)
24. Employee evaluation papers
25. Dr. Hazlewood records
26. Notice of Service including C-32 of Dr. Weisman, Dr. Weisman's February 7, 2023 medical report, his Curriculum Vitae, internal documents from Dr. Weisman's practice, and an application for a disabled person placard completed by Dr. Hazlewood
27. Photograph (identification only)
28. Dates of call-ins and no call/no shows
29. Text message from Christine Wade to Ms. Lemaire

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on June 20, 2023.

| Name | U.S. Mail | Email | Service sent to: |
|---|---|---|---|
| Belinda Lemaire, Self-Represented Employee | X | X | b.lemaire1@outlook.com 401 Jonesboro Court Lavergne, TN 37086 |
| Tiffany Sherill Employer's Attorney | | X | tbsherrill@mijs.com dmduignan@mijs.com |

_____
Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**

11

For notices of appeal filed on or after July 1, 2022.



Compensation Order Right to Appeal:

If you disagree with this Compensation Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1.  Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the Compensation Order was filed.  When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You are responsible for ensuring a complete record is presented on appeal.  The Court Clerk will prepare the technical record and exhibits for submission to the Appeals Board, and you will receive notice once it has been submitted. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  A licensed court reporter must prepare a transcript, and you must file it with the Court Clerk *within fifteen calendar days* of filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of filing the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the testimony presented at the hearing.  The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board.  If the Appeals Board must review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.  You have *fifteen calendar days* after the date of that notice to file a brief to the Appeals Board.  *See the Rules governing the Workers' Compensation Appeals Board on  the Bureau's website*

***For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.***

**If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry. Tenn. Code Ann. § 50-6-239(c)(7).**



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on _____    ☐ Other Order filed on _____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | | | |
|---|---|---|---|---|
| Groceries | $ _____ per month | | Telephone | $ _____ per month |
| Electricity | $ _____ per month | | School Supplies | $ _____ per month |
| Water | $ _____ per month | | Clothing | $ _____ per month |
| Gas | $ _____ per month | | Child Care | $ _____ per month |
| Transportation | $ _____ per month | | Child Support | $ _____ per month |
| Car | $ _____ per month | | | |
| Other | $ _____ per month (describe: _____ ) | | | |

10. Assets:

| | | | |
|---|---|---|---|
| Automobile | $ _____ | (FMV) | _____ |
| Checking/Savings Acct. | $ _____ | | |
| House | $ _____ | (FMV) | _____ |
| Other | $ _____ | Describe: | _____ |

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)        RDA 11082